UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDI L. KUNNEMANN, as INDEPENDENT ADMINISTRATOR OF THE ESTATE OF KARIN K. KUNNEMANN )<br><br>PLAINTIFF )<br><br>vs. )<br><br>)<br>)<br>JANSSEN PHARMACEUTICA PRODUCTS, L.P., )<br>a New Jersey Corporation; and ALZA CORPORATION, )<br>a Delaware Corporation )<br>)<br>DEFENDANTS ) | NO. 05-C03211<br><br>Judge Castillo<br>Magistrate Judge Keys |

**FIRST AMENDED COMPLAINT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Comes now the Plaintiff, Randi L. Kunnemann, Independent Administrator of the Estate of Karin K. Kunnemann and for her First Amended Complaint against the above named Defendants, Janssen Pharmaceutica Products, L.P.; and Alza Corporation, states as follows:

**DESCRIPTION OF PARTIES**

1. The Plaintiff, Randi L. Kunnemann, is an individual residing in Naperville, Illinois. She is the parent and Independent Administrator of the Estate of Karin K. Kunnemann (the "Estate").

2. The Defendant, Janssen Pharmaceutica Products, L.P., ("Janssen") is a New Jersey corporation with its principal office located at 1125 Trenton-Harbourton Road, Titusville, New Jersey and does business in Naperville, Illinois and nationwide as the marketer and distributor of the Duragesic patch at issue in this litigation. Janssen placed the patch in the

stream of commerce resulting in its sale to Karin K. Kunnemann. The Service of Process Agent is The Corporation Company, c/o The Corporation Company, 30600 Telegraph Road, Bingham Farms, Michigan 48025.

3. The Defendant, Alza Corporation ("Alza"), is a Delaware corporation with its primary office located at 1900 Charleston Road, P.O. Box 7210, Mountain View, California 94039-7210. Alza manufactured the Duragesic patch at issue in this litigation. Alza placed the Duragesic patch at issue in the stream of commerce resulting in its sale to Ms. Kunnemann. The Service of Process Agent is CT Corporation System, 818 West Seventh Street, Los Angeles, California 90017.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over all of the parties pursuant to 28 USCA Section 1332.

5. Each Defendant has a primary place of business and is incorporated in other states, though each conducts business in the State of Illinois.

6. Defendants Janssen and Alza are subject to this Court's jurisdiction by virtue of the fact that they manufactured, marketed, and placed in the stream of commerce the Duragesic patch purchased by Ms. Kunnemann in Illinois.

7. The Plaintiff and the Defendants citizenship is diverse as referenced in the foregoing paragraphs, and the amount in controversy exceeds $75,000.

## GENERAL ALLEGATIONS

8. Beginning in January, 1995, Karin K. Kunnemann, suffered from severe and chronic pain which required extensive medical intervention. As a result, decedent sought

treatment with numerous physicians, who treated her with numerous pain medications through and including the date of her death on June 8, 2004.

9. Despite her severe pain, Ms. Kunnemann had been employed, and planned to continue working.

10. On June 6, 2004, upon discharge from the hospital, Ms. Kunneman was prescribed a Duragesic Patch, 100 mcg, to relieve her chronic pain. The patch was placed on Ms. Kunneman at 6:06 A.M. Only one patch was applied.

11. The next day, June 7, 2004, Ms. Kunneman appeared very tired, and went to lie down at approximately 11:00 A.M. Her mother checked on her throughout the day and night, and believed Ms. Kunneman to be sleeping.

12. On the morning of June 8, 2004, Ms. Kunneman's mother attempted to wake her daughter, and when she could not be awakened, called 911.

13. Ms. Kunneman was pronounced dead on June 8, 2004, and subsequent autopsy confirmed that the death was caused by improper delivery of Fentynal and Fentynal toxicity, with a Fentynal blood concentration of 5.82 ng/ml, which is more than 50% greater than the usual higher end of the serum concentration, as testified to by employees of Alza.

14. Ms. Kunnemann and her family did not know, nor could they have reasonably discovered, that the Duragesic patch was defective until it caused her death on the morning of June 8, 2004.

15. Ms. Kunnemann's untimely death deprived her of the ongoing love, society, companionship, and the support that she enjoyed with her family. Without limitation of the foregoing, in connection with counts and claims set forth hereafter, Plaintiff claims any and all rights to which she would be entitled including any rights under the doctrines of loss consortium

and/or loss of companionship and society and further preserves any claims arising from her daughter's death. Plaintiff seeks full and fair damages for the pecuniary, economic/income, and lost economic support to which she is entitled.

### COUNT I – PRODUCT LIABILITY – STRICT LIABILITY

16. Plaintiff repeats and realleges the foregoing paragraphs, as if fully set forth herein.

17. Plaintiff used the Duragesic patch for the purpose of pain management, the usual, foreseeable, and intended use of Defendants' product.

18. Defendants are commercial suppliers. Alza is the manufacturer of the Duragesic patch, as defined by 735 ILCS 5/2-2101. Janssen is the distributor of the Duragesic patch, placing them into the stream of commerce to be purchased and used by consumers nationwide, as defined by 735 ILCS 5/2-2101.

19. Defendants had a duty to design, manufacture, distribute and sell the Duragesic patch so that it was neither defective, nor unreasonably dangerous when put to the use for which it was designed, manufactured distributed or sold.

20. At the time the Duragesic patch left the possession of Defendants and at the time it entered into the stream of commerce, it was in an unreasonably dangerous and defective condition.

21. As a direct and proximate result of the foregoing, the Duragesic patch did cause Plaintiff's decedent to suffer a fatal overdose.

22. As a result of the foregoing, Karin Kunnemann received a fatal overdose of fentanyl released by the Defendants' product. Plaintiff is therefore entitled to a judgment awarding special, general, pecuniary and loss of companionship and society damages to and

among the individuals as set forth above, in an amount to be determined at trial as set forth in the Prayer for Relief.

23. Additionally, Defendants' conduct is so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of consumers. Plaintiff is therefore entitled to punitive damages. All of the Defendants are liable to Plaintiff jointly and severally for all general, special and equitable relief to which the Plaintiff is entitled by law.

## COUNT II – PRODUCT LIABILITY - NEGLIGENCE

24. Plaintiff repeats and realleges the foregoing paragraphs, as if fully set forth herein.

25. Defendants were engaged in the business of formulating and preparing the Duragesic patch. Defendants owed Plaintiff the duty of care regarding design and manufacture of the Duragesic patch so that it was neither defective, nor unreasonably dangerous when put to the use for which it was designed, manufactured distributed or sold.

26. There were defects in the manufacture and design of the Duragesic patch, which subsequently led to Karin Kunnemann's death.

27. Defendants knew or should have known that Plaintiff would reasonably rely on its proper manufacture in use of the Duragesic patch.

28. Defendants breached their duty to Plaintiff by failing to detect a design or manufacture defect.

29. Defendants breached their duty to Plaintiff by supplying the defective Duragesic patch.

30. Plaintiff has relied on Defendants by use of the Duragesic patch. The defects alleged ordinarily would not happen in the absence of negligence. Defendants had exclusive control over the product at all relevant times.

31. By reason of *res ipsa loquitur*, Defendants were negligent in supplying the defective Duragesic patch.

32. As a result of the foregoing, Karin Kunnemann received a fatal overdose of fentanyl released by the Defendants' product. Plaintiff is therefore entitled to a judgment awarding special, general, pecuniary and loss of companionship and society damages to and among the individuals as set forth above, in an amount to be determined at trial as set forth in the Prayer for Relief.

33. Additionally, Defendants' conduct is so outrageous as to constitute ill will, bad motive and reckless indifference to the interests of consumers. Plaintiff is therefore entitled to punitive damages. All of the Defendants are liable to Plaintiff jointly and severally for all general, special and equitable relief to which the Plaintiff is entitled by law.

## **COUNT III – BREACH OF EXPRESS WARRANTY**

34. Plaintiff repeats and realleges the foregoing paragraphs, as if fully set forth herein.

35. The Duragesic patch used by Plaintiff came with an express written warranty stating that the Duragesic patch including but not limited to the following statements:

> DURAGESIC is a thin, adhesive, rectangular patch that is worn on your skin. DURAGESIC delivers a strong pain-relieving medicine called "fentanyl" through the skin and into the bloodstream. Through this time-released transdermal system, each DURAGESIC patch provides up to 3 days (72 hours) of pain relief. It should only be used to relieve moderate-to-severe chronic pain.

\* \* \*

> The unique design of the DURAGESIC patch allows tiny amounts of fentanyl to be delivered into the body over a period of up to 3 days (72 hours) per patch.

> What allows this process to happen is that the sticky side of each patch is made of a special material, called a semi-permeable membrane, which allows the medication to pass through it at a controlled rate.

> When the patch is applied to the skin, the fentanyl inside the patch slowly moves through the membrane and becomes absorbed by the skin underneath. The fentanyl concentrates in the upper skin layers in what is called a depot. Once the depot is formed, the fentanyl is carried by the bloodstream to the central nervous system a little bit at a time, where it works to relieve pain.

Ex. D, (http://www.duragesic.com/patient/about/faqs.jsp, (2004 version).

36. Defendants breached their warranty by manufacturing, marketing, and distributing the Duragesic patch in a condition such that they do not perform the necessary functions of pain management and time released delivery.

37. Defendant has received timely notice of the breach of warranty alleged herein.

38. Defendant has essentially further breached its warranty by not instituting a complete recall on February 16, 2004 of all implicated lots, but claiming that the recall was limited to a single lot.

39. At all relevant times, there was in full force and effect the Illinois Commercial Code, 810 ILCS § 5/1-101 et seq. (the "Code").

40. Section 2-313 of the Code provides, in relevant part:

(1) Express warranties by the seller are created as follows:

   (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

   (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

41. Defendant Janssen's web page, FAQs states:

> 6. What are the advantages of the DURAGESIC patch?

> DURAGESIC is convenient. Each DURAGESIC patch gives you up to 3 days (72 hours) of effective pain relief. That means you should only have to change your DURAGESIC patch every 3 days instead of having to stop your daily activities to take a pill every 4, 6, 8, or 12 hours.
>
> DURAGESIC also give you consistent pain relief. The slow release of fentanyl into the bloodstream minimizes the peaks and valleys in pain relief found with other pain medications. This means you may avoid some of the problems that can occur with other pain therapies, such as having your pain come back several times a day before you take the next dose.
>
> DURAGESIC is generally well tolerated. Because DURAGESIC enters the body through the skin instead of through the stomach, it may lessen local side effects in the digestive system. For more information on the side effects, please see "What are important side effects and precautions associated with DURAGESIC?"
>
> Studies have shown that patients prefer DURAGESIC over the other short-acting and long-acting opioid pain therapies:
>
> - In clinical studies, 75% of people using DURAGESIC reported excellent or good responses to therapy versus only 42.5% on their previous opioid medication.*
>
> - In another trial of 504 people, the largest cross-sectional study to date comparing 2 opioids, patients were significantly more satisfied with DURAGESIC than with sustained-release oral morphine (p=0.035).

(http://www.duragesic.com/patient/about/faqs.jsp, (2004 version).

    42.    Defendant breached this express warranty by distributing the Duragesic patch which did not safely deliver the medication as warranted.

    43.    Plaintiff has been damaged by Defendants' breach of their express warranties and therefore is entitled to damages under the following sections of the code:

    (a)    2-715 for incidental and consequential damages, including "injury to person…proximately resulting from any breach of warranty." 2-715(2)(b); and

(b)  2-721 for material misrepresentation, which includes all remedies available under the code for non-fraudulent breach.

## COUNT IV – BREACH OF IMPLIED WARRANTY

44. Plaintiff repeats and realleges the foregoing paragraphs, as if fully set forth herein.

45. At all relevant times there was in full force and effect the Illinois Commercial Code, 810 ILCS § 5/1-101 et seq. ("the Code").

46. Section 2-314 of the Code provides, in relevant part:

(1)  Unless excluded or modified (Section 2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.
. . . .

(2)  Goods to be merchantable must be at least such as:

    (a)  pass without objection in the trade under the contract description; and

. . . .

    (d)  run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and

47. By failing to properly deliver pain medication, the goods would not pass without objection in the trade under the contract description.

48. Defendants breached the implied warranty of merchantability in that the Duragesic patches were not in a merchantable condition when sold or at any time thereafter and were not fit for the ordinary purpose for which such goods are used in that they did not properly deliver pain medication as warranted and failed to function appropriately.

49. Plaintiff has been damaged by Defendant's breach of its implied warranties and therefore is entitled to damages under the following sections of the Code:

    (a)    2-715 for incidental and consequential damages, including "injury to person…proximately resulting from any breach of warranty." 2-715(2)(b); and

    (b)    2-721 for material misrepresentation, which includes all remedies available under the code for non-fraudulent breach.

## COUNT V

## VIOLATION OF ILLINOIS CONSUMER FRAUD & DECEPTIVE BUSINESS PRACTICES ACT

50. Plaintiff repeats and realleges the foregoing paragraphs, as if fully set forth herein.

51. At all relevant times, there was in full force and effect the Illinois Consumer Fraud Deceptive Business Practices Act, 815 ILCS 505/1, *et seq* ("Act).

52. Section 2 of the Act, 815 ILCS 505/2 provides in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been mislead, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

53. Section 2, 815 ILCS 510/2 provides in pertinent part:

§ 2. A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
\* \* \*
    (5)    represents that goods or services have…characteristics,…uses benefits or quantities that they do not have;
\* \* \*

(12)   engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

54.   In order to prevail in an action under this Act, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding. This Section does not affect unfair trade practices otherwise actionable at common law or under other Illinois statutes.

55.   Section 10a of the Consumer Fraud Act, states, in pertinent part:

(a)   Any person who suffers damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual damages or any other relief which the court deems proper. Proof of public injury, a pattern, or an effect on consumers generally shall not be required.

\* \* \*

(c)   Except as provided in subsection (f), (g) and (h) of this Section, in any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

56.   Defendant's misrepresentations, as detailed above and continued within documents produced during discovery, violate the Act.

## COUNT VI-UNJUST ENRICHMENT

57.   Plaintiff repeats and realleges the foregoing paragraphs, as if fully set forth herein.

58.   As the intended and expected result of their manufacturing, creating, designing, testing, labeling, packaging, supplying, advertising, marketing, selling, warning or distributing Duragesic in interstate commerce, Defendants have profited and benefited from the Plaintiff's use of Duragesic as testified by Defendants' employees.

59.   Defendants have voluntarily accepted and retained these profits and benefits, derived from the Plaintiff, with full knowledge and awareness that, as a result of Defendants'

wrongdoings, Plaintiff was not receiving a product of the quality, nature or fitness that had been represented by Defendants or that the Plaintiff, as a reasonable consumer, expected.

60.     Allowing the Defendants to retain such a benefit gained from such conduct violates the fundamental principles of justice, equity and good conscience.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Randi L. Kunnemann, Independent Administrator of the Estate of Karin K. Kunnemann, requests that judgment be entered against the above-named Defendants, Janssen Pharmaceutica Products, L.P., and Alza Corporation, as follows:

A.     For general damages, including loss of financial support and all pecuniary injury suffered by Plaintiff as a consequence of the death of Karin K. Kunnemann;

B.     For past medical bills and funeral expenses associated with the death and autopsy of Karin K. Kunnemann;

C.     For special damages to the Plaintiff, including but not limited to loss of past wages and future earning capacity and income and any pain and suffering as a result of the injuries and death of Karin K. Kunnemann;

D.     For any all damages Plaintiff is entitled to pursuant to the Wrongful Death Act, 740 ILCS 180/1 *et seq*.

E.     For statutory damages set forth above;

F.     For punitive damages;

G.     For Plaintiff's reasonable attorneys' fees, court costs, and interest of items of special damages; and

H.     For any and all other relief which the Court shall deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff specifically requests and demands a trial by jury on all issues alleged herein.

DATED this13th day of April, 2007.

        Respectfully submitted,


        /s/ Sheila P. Hiestand
        Sheila P. Hiestand
        Christopher W. Goode
        BUBALO, HIESTAND & ROTMAN, PLC
        1344 South Broadway
        Lexington, Kentucky 40504
        Tel: (859) 519-1750
        Fax: (859) 258-2966

        and

        Michael D. Poulos
        MICHAEL D. POULUS, P.C.
        1724 Sherman Avenue
        Evanston, Illinois 60201
        Tel: (847) 492-9800
        Fax: (947)492-9801

*20742 / 203715*