UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RANDI L. KUNNEMANN, as INDEPENDENT ADMINISTRATOR OF THE ESTATE OF KARIN K. KUNNEMANN, <br><br> PLAINTIFF <br><br> vs. <br><br> JANSSEN PHARMACEUTICA PRODUCTS, L.P., a New Jersey Corporation; and ALZA CORPORATION, a Delaware Corporation, <br><br> DEFENDANTS | NO. 05-C03211 <br><br> Judge Castillo <br> Magistrate Judge Keys |

## PLAINTIFF'S MOTION FOR APPLICATION OF
## COLLATERAL ESTOPPEL AND BRIEF IN SUPPORT

Plaintiff Randi Kunnemann hereby files her Motion for Application of Collateral Estoppel and Brief in Support and would show the Court as follows

### INTRODUCTION

Plaintiff has asserted claims against Defendants for negligence and strict product liability based on a manufacturing, marketing and design defect in Defendants' 100 microgram Duragesic fentanyl pain patch. The evidence demonstrates that 27 year-old Karin Kunnemann died when her Duragesic patch malfunctioned and gave her a lethal dose of fentanyl. Among the evidence supporting this conclusion is the autopsy performed by Dr. Harkey, the opinions of Dr. Michael Baden, the opinions of Dr. Cheryl Blume and the opinions of Michael Anisfeld.

Plaintiff's warning defect claim is based in part on the allegation that the package insert in effect at the time of Kunnemann's death did not properly warn of the possibility of leaking patches and the dangers associated with such leaks. In a prior federal court lawsuit involving

**PLAINTIFF'S MOTION FOR APPLICATION OF**
**COLLATERAL ESTOPPEL AND BRIEF IN SUPPORT**  Page 1

these same Defendants, the jury concluded that the Defendant's Duragesic pain patch contained a marketing defect based on a failure to warn about foreseeable dangerous patch leaks. The jury's finding was incorporated into a final judgment in favor of the plaintiff in that case. The judgment was never appealed nor set aside. As set forth more fully below, the Court should invoke the doctrine of collateral estoppel, enter an order that Defendants are precluded from relitigating in this case the existence of a warning defect in the Duragesic patch that killed Karin Kunnemann and enter an order instructing the jury as a matter of law that such patch was defective due to inadequate warnings.

## FACTS

Plaintiff's warning defect claim is based in part on the allegation that the package insert in effect at the time of Kunnemann's death did not properly warn of the possibility of leaking patches and the dangers associated with such leaks. In Plaintiff's First Amended Complaint, attached hereto as Exhibit 1, Plaintiff alleged that Kunnemann's Duragesic patch was unreasonably dangerous because of Defendants' defective design, manufacturing and marketing. *Id.* at ¶¶ 19-20. In his Answers to Defendant Alza Corporation's First Set of Interrogatories, attached hereto as Exhibit 2, Plaintiff further stated:

> Plaintiff states that Defendants and their agents and employees failed to provide adequate warnings with the Duragesic patches rendering them unreasonably dangerous and unfit for the ordinary purposes for which they were intended, in breach of warranty. This failure to warn includes but is not limited to: the failure to warn the consumer that there had been prior leaks with these patches; . . . that the risk of death as a result of these leaks was substantial; . . . that Defendants knew or should have known that the risk of leak was statistically relevant and required sufficient, clearly marked, visible and accessible warnings.

Exhibit 2 at p. 14.

In Case No. 05-CV-81116-CIV-HURLEY in the United States District Court for the Southern District of Florida, styled *Lee Hendelson, as Personal Representative of the Estate of*

*Adam Hendelson, Deceased v. Alza Corporation and Janssen Pharmaceutica* ("*Hendelson*"), the Plaintiff brought suit against the Defendants alleging that the death of Adam Hendelson was caused by a defective Duragesic fentanyl pain patch. The claims against Defendants were for negligence and strict liability for manufacturing, design and marketing defects. The *Hendelson* case involved the same issue that is present in the above-entitled case in this Court relating to the defendants' failure to warn. Exhibit 3 at ¶5. In this regard, in the *Hendelson* case, the plaintiff asserted that the warnings provided with the Duragesic patch were inadequate, defective, and negligent in that they failed to warn of dangerous leaking patches being sold by defendants. *Id.* The warnings (i.e., package insert) at issue in the *Hendelson* case were the exact same warnings (i.e., package inserts) involved in this case, word for word. *Id.* The jury in the *Hendelson* case was given a set of special interrogatories and answered "yes" to the following question:

> "Did defendant Alza Corporation place the Duragesic patch on the market with a warning defect due to failure to warn about foreseeable dangerous patch leaks which was a legal cause of damage to the plaintiff, Lee Hendelson, as Personal Representative of the Estate of Adam Hendelson?"

*Id.* at ¶6. A true and correct copy of the jury's verdict form is attached hereto as Exhibit 3-A. The jury's finding was incorporated into a final judgment in favor of the plaintiff in that case, a true and correct copy of which is attached hereto as Exhibit 3-B. The judgment was never appealed, set aside or vacated. Exhibit 3 at ¶9.

## ARGUMENT AND AUTHORITIES

**I.  Under the doctrine of collateral estoppel, the Court should give preclusive effect to the *Hendelson* court's finding of a warnings defect.**

The doctrine of collateral estoppel refers to a judgment's effect of "foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action." *Havoco of Am. v. Freeman, Atkins & Coleman*, 58 F.3d 303, 307

(7th Cir. 1995). Where, as here, the judgment at issue was rendered by a federal court sitting in diversity, this Court must apply federal law in determining its preclusive effect. *Havoco*, 58 F.3d at 307 ("recent cases have articulated a blanket rule that whenever the first judgment is a federal judgment, federal rules of preclusion must apply."); *Gann v. William Timblin Transit, Inc.*, 552 F. Supp.2d 1021, 1027 (N.D. Ill. 2007) ("Where a dispute exists over whether a lawsuit is precluded by a previous lawsuit filed in federal court, the federal rules of claim preclusion apply."); *Graebel/Los Angeles Movers, Inc. v. Johnson*, No. 04 C 8282, 2006 U.S. Dist. LEXIS 8273 at *8, n. 3 (N.D. Ill. March 1, 2006) ("In this diversity action, the court applies the substantive law – including choice of law rules – of the forum in which it sits. In Illinois, 'the collateral estoppel or res judicata effect of a judgment is determined by the law of the jurisdiction where the judgment is entered. Because the prior action was litigated in federal court, this court applied the federal common law of res judicata."). Under the federal common law, collateral estoppel applies if (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Havoco*, 58 F.3d at 307; *see also Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994). As set forth more fully below, each of these elements is present here.

A. **The warning defect issue in this case is the same as that in *Hendelson*.**

The warning defect issue in this case is the same as that in *Hendelson*. In this case, Plaintiff has alleged that Kunnemann's Duragesic patch was unreasonably dangerous because of Defendants' defective design, manufacturing and marketing. *Id.* at ¶¶ 19-20. Plaintiff has further asserted that Defendants' failure to warn specifically included "the failure to warn the consumer that there had been prior leaks with these patches; . . . that the risk of death as a result

of these leaks was substantial; . . .[and] that Defendants knew or should have known that the risk of leak was statistically relevant and required sufficient, clearly marked, visible and accessible warnings." Exhibit 2 at p. 14. The *Hendelson* case involved the same issue that is present in this Court relating to the defendants' failure to warn. Exhibit 3 at ¶5. In this regard, in the *Hendelson* case, the plaintiff asserted that the warnings provided with the Duragesic patch were inadequate, defective, and negligent in that they failed to warn of dangerous leaking patches being sold by defendants. *Id.* The warnings (i.e., package insert) at issue in the *Hendelson* case were the exact same warnings (i.e., package inserts) involved in this case, word for word. *Id.* The first element of collateral estoppel has clearly been met.

    **B.**    **The warning defect issue was actually litigated in *Hendelson*.**

Second, the warning defect issue was actually litigated as a result of a full trial on the merits in *Hendelson*. The warning defect issue was hotly contested by the Defendants in *Hendelson*. Exhibit 3 at ¶7. Defendants called witnesses to refute Plaintiff's claim that the Duragesic patch was unreasonably dangerous due to a warnings defect. *Id.* The issue was fully developed by both sides and submitted to the jury. *Id.* The jury subsequently concluded that the Duragesic patch suffered from "a warning defect due to failure to warn about foreseeable dangerous patch leaks." Exhibit 3 at ¶6; Exhibit 3-A at p. 1. Clearly, the warning defect issue was actually litigated in *Hendelson*.

    **C.**    **The determination of a warning defect was essential to the final judgment in *Hendelson*.**

Furthermore, the determination of the existence of a warning defect was essential to the final judgment in *Hendelson*. The theories of recovery asserted by the Plaintiff in *Hendelson* were based on design, manufacturing and marketing defects. The jury found the existence of a manufacturing and warning defect, but no design defect. Exhibit 3-A. The Judgment rendered

by the Court was for the Plaintiff based on these theories of recovery. Exhibit 3-C. Clearly, the determination that there was a warning defect in the Duragesic patch was essential to the judgment in *Hendelson.*

### D. The Defendants herein were fully represented in *Hendelson.*

Finally, the Defendants herein were fully represented in *Hendelson*. First, as can be seen by the captions of the two cases, the Defendants are the same. Second, in *Hendelson,* the Defendants were represented by competent, experienced counsel. These counsel included the Tucker Ellis attorneys representing these same Defendants in this lawsuit. *See* Exhibit 4. Clearly, the Defendants herein were fully represented in the *Hendelson* case. For the reasons set forth more fully above, the Court should invoke the doctrine of collateral estoppel, enter an order that Defendants are precluded from relitigating in this case the existence of a warning defect in the Duragesic patch that killed Karin Kunnemann and enter an order instructing the jury as a matter of law that such patch was defective due to inadequate warnings.

## II. Numerous courts have applied collateral estoppel to findings of product defect, including findings of warnings defects.

As set forth above, each of the four elements of collateral estoppel have been met. For this reason, the Court should enter orders holding that Defendants are precluded from relitigating in this case the existence of a warning defect in the Duragesic patch that killed Karin Kunnemann and instructing the jury as a matter of law that such patch was defective due to inadequate warnings. Courts in similar cases have applied collateral estoppel in the context of product defect claims, including claims based on inadequate warnings. In *Ezagul v. Dow Chemical Corp.*, 598 F.2d 727 (2d Cir. 1979), for example, the plaintiff brought a product liability suit against Parke-Davis and others asserting that a vaccine administered to the plaintiff's infant son was defective and caused him to suffer brain damage and, eventually, death.

Before trial the district court denied plaintiff's application to collaterally estop Parke-Davis from denying that its vaccine was defective as had been previously determined in another case. Later, the district court dismissed the plaintiff's case in its entirety. On appeal, the plaintiff argued in part that the district court erred in refusing to apply collateral estoppel. The court of appeals agreed, noting that a prior court had determined that the package insert for the vaccine was "inadequate in light of the frequency and severity of adverse reactions" associated with the drug and reported to Parke-Davis. *Id.* at 732. Because each of the elements of collateral estoppel were present, the court held that "on retrial the plaintiff will be entitled to an order collaterally estopping Parke-Davis from denying the inadequacy of the warnings contained in the Quadrigen package inserts." *Id.* at 733; *see also Dewey v. R.J. Reynolds Tobacco Co.,* 577 A.2d 1239 (N.J. 1990) ("offensive collateral estoppel has been applied in product liability cases to preclude a producer from denying the inadequacy of a warning found inadequate in a previous case in which the producer defended the claims against a different plaintiff.").

Similarly, in the case of *Fraley v. American Cyanamid Co.,* 570 F. Supp. 497 (D. Colo. 1983), the plaintiff sought summary judgment on collateral estoppel grounds in a case involving an allegedly defective polio vaccine. Specifically, the plaintiff sought "collaterally to estop Lederle from litigating the issue of the adequacy of the warning it gave regarding the risk of use of Orimune polio vaccine." *Id.* at 498. The court noted that the warnings at issue in its case were identical to those found inadequate in a prior case, that the adequacy of the warnings was actually litigated and essential to the judgment in the prior case and that no court had ever found the warnings at issue to be adequate. *Id.* Based on these findings, the court granted the motion for summary judgment on the basis of collateral estoppel. *Id.* at 505; *see also Amader v. Johns-Manville Corp.,* 541 F. Supp. 1384 (E.D. Pa. 1982) (applying offensive, non-mutual collateral

**PLAINTIFF'S MOTION FOR APPLICATION OF**
**COLLATERAL ESTOPPEL AND BRIEF IN SUPPORT** Page 7

estoppel to previous jury verdict that defendant's asbestos product was defective); *Mooney v. Fibreboard Corp.,* 485 F. Supp. 242 (E.D. Tex. 1980) (applying offensive, non-mutual collateral estoppel to prior jury finding that "asbestos products as manufactured, marketed, sold or distributed were unreasonably dangerous and defective"). As set forth more fully above, the Court should invoke the doctrine of collateral estoppel, enter an order that Defendants are precluded from relitigating in this case the existence of a warning defect in the Duragesic patch that killed Karin Kunnemann and enter an order instructing the jury as a matter of law that such patch was defective due to inadequate warnings.

## CONCLUSION AND PRAYER

WHEREFORE Plaintiff Randi Kunnemann respectfully prays that the Court grant this Motion, enter an order that Defendants are precluded from relitigating in this case the existence of a warning defect in the Duragesic patch that killed Karin Kunnemann, enter an order instructing the jury as a matter of law that such patch was defective due to inadequate warnings and grant Plaintiff such other and further relief to which she may be justly entitled.

By: *s/Christopher W. Goode*
Sheila P. Hiestand
Christopher W. Goode
**Bubalo & Hiestand, PLC**
1344 South Broadway
Lexington, Kentucky 40504
Tel: (859) 519-1750
Fax: (859) 519-1751

Michael D. Poulos
**Michael D. Poulos, P.C.**
1724 Sherman Avenue
Evanston, Illinois 60201
Telephone 847-492-9800
Fax 847-492-9801

> James Craig Orr, Jr.
> Texas Bar No. 15313550
> Charles W. Miller
> Texas Bar No. 24007677
> **Heygood, Orr, Reyes, Pearson & Bartolomei**
> 2331 W. Northwest Highway, 2nd Floor
> Dallas, TX 75220
> 214-526-7900 Telephone
> 214-526-7910 Facsimile

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2008, I served the foregoing document on all counsel of record electronically via the ECF system.

> *s/Christopher W. Goode*
> Sheila P. Hiestand
> Christopher W. Goode
> **Bubalo & Hiestand, PLC**
> 1344 South Broadway
> Lexington, Kentucky 40504
> Tel: (859) 519-1750
> Fax: (859) 519-1751